UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CHARLES DANILE SHOEMATE, # 66283                               PLAINTIFF

VERSUS                               CIVIL ACTION NO. 3:15cv208-CWR-LRA

MISSISSIPPI DEPARTMENT OF
CORRECTIONS, MISSISSIPPI PAROLE
BOARD, MARSHALL L. FISHER, and
STEVE PICKETT                                                  DEFENDANTS

MEMORANDUM OPINION AND ORDER OF DISMISSAL

This matter is before the Court *sua sponte*.  *Pro se* Plaintiff Charles Danile Shoemate is

incarcerated with the Mississippi Department of Corrections ("MDOC"), and he brings this action

complaining of the denial of a parole eligibility date.  The Court has considered and liberally

construed the pleadings.  For the reasons set forth below, the Court finds that this case should be

dismissed.

BACKGROUND

According to the pleadings, Shoemate was convicted of possession of cocaine in 2011, in

Hinds County.  He was sentenced to five years imprisonment.  Shoemate was then released on parole

in 2012.  However, Shoemate's parole was revoked on March 26, 2013, when he was arrested and

charged with the sale of cocaine in Rankin County.  In September of that year, Shoemate was

convicted of the sale of cocaine.  He was sentenced to serve eighteen years in the custody of the

MDOC.  The second sentence runs consecutively to the first.

Shoemate alleges that upon entering MDOC the second time, he was given a parole eligibility

date of September 29, 2016.  However, in August of 2014, MDOC conducted an audit of prisoner

time sheets, which resulted in the removal of that parole eligibility date.  Shoemate alleges he was informed that the audit resulted in the removal of parole eligibility dates for all prisoners with sale convictions.  This audit coincided with the amendments to Mississippi Code Annotated §§ 41-29-139(a) and 47-7-3(1)(f), which now allow for certain sales of cocaine to become parole eligible. Shoemate was further informed that, while his possession sentence was parole eligible, the sale sentence was not because he had been convicted of that sale charge prior to July 1, 2014.  Shoemate claims, however, that he is parole eligible and that other inmates with sale of cocaine convictions have been getting parole since 2008.  He also alleges that "some inmates are currently out on parole now who were sentenced before July 2014."  (Resp. at 1).

Shoemate brings this action against MDOC, the Mississippi Parole Board, MDOC Commissioner Marshall L. Fisher, and Steven Pickett, the Chairman of the Parole Board.  Shoemate invokes 42 U.S.C. § 1983, asserting claims for violations of due process, *ex post facto*, double jeopardy, and equal protection, as well as for cruel and unusual punishment.  As for relief, Shoemate requests that he either be given a parole eligibility date, re-sentenced under the new statutes, or given a full pardon by Commissioner Fisher.

## DISCUSSION

To the extent Shoemate requests a parole eligibility date, § 1983 is the appropriate legal vehicle.  *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005).

SECTION 1983

The Prison Litigation Reform Act of 1996 ("PLRA") applies to prisoners proceeding *in forma pauperis* in this Court.  The PLRA provides in part that "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state

a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  This framework "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (quotation omitted).  "[I]n an action proceeding under [28 U.S.C. § 1915, a federal court] may consider, sua sponte, affirmative defenses that are apparent from the record even where they have not been addressed or raised. . . ."  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990).  "Significantly, the court is authorized to test the proceeding for frivolousness or maliciousness even before service of process or before the filing of the answer."  *Id.*  Because the Court has permitted Shoemate to proceed *in forma pauperis*, the Complaint is subject to the provisions allowing for *sua sponte* dismissal under § 1915.

Shoemate sues MDOC, the Parole Board, Fisher, and Pickett for the denial of a parole eligibility date, under various theories of due process, equal protection, *ex post facto*, double jeopardy, and cruel and unusual punishment.

I.     DUE PROCESS

First, Shoemate claims that his right of due process was violated, because he believes he is entitled to the opportunity to be considered for parole on his sale of cocaine conviction.

In Mississippi, whether to grant parole is a discretionary decision; therefore Mississippi prisoners have no liberty interest in parole. *Wansley v. Miss. Dep't of Corrs.*, 769 F.3d 309, 312 (5th Cir. 2014).  Shoemate does not ask for parole but instead asks for the opportunity to be considered for parole.  Nevertheless, "an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause."  *Id.*  Shoemate merely asserts that he has a statutory

3

expectation of receiving the procedure of parole consideration.  Without more, this is simply not a

liberty interest protected by the Due Process Clause.  This claim is dismissed as frivolous.

II.     *EX POST FACTO*

Next, Shoemate claims that the denial of a parole eligibility date violates the *Ex Post Facto*

Clause.  He argues that he was entitled to parole eligibility when he was sentenced and that

Defendants are using a later statute to deprive him of a parole eligibility date.

"No . . . ex post facto Law shall be passed."  U.S. Const. art. I, § 9, cl. 3.  An *ex post facto*

law is one that "appl[ies] to events occurring before its enactment, and . . . disadvantage[s] the

offender by it." *Weaver v. Graham*, 450 U.S. 24, 29 (1981).  Unlike a claim under the Due Process

Clause, the:

> presence or absence of an affirmative, enforceable right is not relevant . . . to the *ex post facto* prohibition, which forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred.  Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.

*Id.* at 30.

To determine whether or not Shoemate's State right to parole eligibility was taken away, the

Court first must determine whether or not Shoemate was parole eligible when the crime occurred.

According to the pleadings, Shoemate was returned to MDOC on March 6, 2013, on a parole

revocation.  This was the same day he was arrested and charged with the sale of cocaine.  In 2013,

the sentence for a sale of cocaine was a maximum of thirty years imprisonment, with at least a

$5,000 fine.  Miss. Code Ann. § 41-29-139(b)(1) (2013).  The only exceptions were a mandatory life

sentence without parole for selling at least two ounces, in a 12 month period, and a mandatory 30

4

year sentence, without parole, for trafficking cocaine, i.e., selling it three or more times, in at least two counties, in a 12 month period.  Miss. Code Ann. § 41-29-139(f), (g) (2013).  Shoemate was sentenced to eighteen years; therefore he was sentenced under subsection b.  Additionally, in 2013, the parole statute provided that:

> [n]o person shall be eligible for parole who is convicted after June 30, 1995, except that an offender convicted of only nonviolent crimes after June 30, 1995 may be eligible for parole if the offender meets the requirements in subsection (1) and this paragraph. . . .  For purposes of this paragraph, "nonviolent crime" means a felony other than . . . the sale . . . of a controlled substance. . . .  An offender convicted of a violation under Section 41-29-139(a), not exceeding the amounts specified under Section 41-29-139(b), may be eligible for parole.

Miss. Code Ann. § 47-7-3(1)(h) (2013).   In other words, the statute first provided a blanket prohibition from parole for anyone convicted after June 30, 1995, and then went on to make exceptions to that blanket prohibition.  As Shoemate was convicted after 1995, this blanket prohibition applied to him.  The Court now considers whether Shoemate qualified for any of the exceptions.

One exception was if the prisoner only had nonviolent felony convictions after June 30, 1995, then he or she could qualify for parole eligibility, contingent upon meeting other requirements.  Since Shoemate was convicted of the sale of cocaine after June 30, 1995, he has a violent felony conviction, and therefore he did not qualify for this exception.

The next exception was if an offender was convicted under § 41-29-139(a), the sale of an illegal controlled substance, and that sale did not exceed the amounts specified under § 41-29-139(b), then he or she could be eligible for parole.  Shoemate was convicted of the sale of cocaine under § 41-29-139(a).  The question now remains whether that sale exceeded the amounts specified under subsection b.  Subsection b, in 2013, referenced all five schedules of illegal narcotics, but

marijuana and synthetic cannabinoids were the only drugs for which specific amounts were provided. That is because certain amounts of these two drugs were punished less severely than any amount whatsoever of other drugs.  Miss. Code Ann. § 41-29-139(b) (2013).  Since specific amounts were only provided for marijuana and synthetic cannabinoids, only these sales qualified for the exception to parole ineligibility under § 47-7-3(1)(h).  Another way to consider this is that since no amount was specified for cocaine, under subsection b, it stands to reason that any amount of cocaine exceeded what the State Legislature felt was acceptable for parole eligibility.  In other words, certain sales of marijuana or synthetic marijuana were subject to a lesser sentence and parole eligibility.  Larger sales of these drugs and any sales of cocaine were subject to higher sentences and no parole eligibility. Because Shoemate sold some amount of cocaine, he was ineligible for parole consideration at the time.

Shoemate's *ex post facto* claim therefore fails as a matter of law, because, contrary to his assertion, he was never eligible for parole consideration in the first place.  Therefore he cannot have been disadvantaged by a later law which allegedly denies parole eligibility to someone in Shoemate's position.[1]

III.     DOUBLE JEOPARDY

Shoemate next contends that his right against double jeopardy was violated.  Since he is being denied a parole eligibility date, he argues that his "time to serve doubles. Which [sic] is equal to being sentenced twice for the same crime." (Resp. at 1).

If a person receives two sentences for the same offense, this offends the Double Jeopardy

---

[1]Effective July 1, 2014, the statutes governing both the sale of an illegal controlled substance and parole eligibility were amended.  Miss. Code Ann. §§ 41-29-139, 47-7-3 (2015).

Clause. *United States v. Conlan*, 786 F.3d 380, 387 (5th Cir. 2015).  However, Shoemate received one sentence for one count of the sale of cocaine.  The State trial court sentenced Shoemate to eighteen years.  As set forth above, this was within the statutory range.  He is still serving that one sentence.

Additionally, even if Shoemate was entitled to be considered for parole, parole is not guaranteed.  As explained previously, it is a matter of executive grace, which may cut a sentence short.  This fact, however, does not mean that the absence of parole converts that sentence into multiple sentences.  Indeed, "[t]he denial of release on parole is not an additional punishment." *Olstad v. Collier*, 326 F. App'x 261, 265 (5th Cir. Apr. 27, 2009) (citing *Coronado v. United States Bd. of Parole*, 540 F.2d 216, 218 (5th Cir. 1976)).  Shoemate's double jeopardy claim is frivolous.

IV.     EQUAL PROTECTION

Shoemate claims that his right to equal protection was violated when, allegedly, cocaine sales have been getting parole since 2008 and "some inmates are currently out on parole now who were sentenced before July 2014."  (Resp. at 1).

To state an equal protection claim, a plaintiff must allege (1) he was intentionally discriminated against because of his membership in a protected class, or (2) he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 238 (5th Cir. 2012).

Shoemate does not allege membership in a protected class.  Instead he complains that he is being denied parole eligibility because he was convicted prior to July 1, 2014, but some inmates who were convicted prior to this date "are currently out on parole now."  Notably, he does not allege that any of these inmates were paroled after the audit in August of 2014, and that they were also

convicted of the sale of cocaine.  Therefore, he does not allege differential treatment from others similarly situated to him.  Having failed to allege membership in a protected class or differential treatment from those similarly situated, Shoemate fails to state an equal protection claim.

V.        CRUEL AND UNUSUAL PUNISHMENT

Finally, Shoemate alleges that the denial of a parole eligibility date, in and of itself, constitutes cruel and unusual punishment, because it is allegedly "common knowledge that sell's [sic] are parole eligible."  (Resp. at 1).

In order to prove that his sentence violates the Cruel and Unusual Punishment Clause, the plaintiff must first show that his sentence is "grossly disproportionate" to the gravity of the charged offense.  *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).  "Only if we infer that the sentence is grossly disproportionate to the offense will we then consider the remaining factors of the *Solem*[2] test and compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions."  *Id.* (footnote added).  "If we conclude that the sentence is not 'grossly disproportionate,' our inquiry is finished. . . ."  *United States v. Gonzales*, 121 F.3d 928, 942 (5th Cir. 1997).  "To determine whether a sentence is 'grossly disproportionate,' we look to *Rummel v. Estelle*, 445 U.S. 263, 63 L. Ed. 2d 382, 100 S. Ct. 1133 (1980), as a benchmark."  *Id.* at 943.

For example, in *United States v. Gonzales*, the Fifth Circuit Court of Appeals compared the crime and sentence at issue in that case to those in *Rummel*.  *Id.* at 943-44.  The Court noted that *Rummel* involved a defendant sentenced, as an habitual offender, to life with the chance of parole for obtaining $120.75 by false pretenses.  *Id.* at 943.  The Court then compared Gonzales's thirty

---

[2]*Solem v. Helm*, 463 U.S. 277 (1983).

year sentence for using a machine gun during, and in relation to, a drug trafficking offense. *Id.* at 944.   Because the gravity of Gonzales's offense was greater, and his sentence shorter, than Rummel's, the court held that Gonzales's sentence was not grossly disproportionate. *Id.*

Shoemate complains that he has to serve eighteen years without parole for the sale of cocaine. He does not specify how much cocaine he was convicted of selling or allege any other facts concerning his particular charge.  The only thing he alleges in support of his Eighth Amendment argument is that sales of controlled substances are eligible for parole, by statute.  Thus he fails to plead that his sentence is grossly disproportionate to the gravity of the offense charged.  Rather, he relies on the second prong of the *Solem* test, which compares his sentence to other sentences in the same jurisdiction.  Pursuant to the above authority, the Court cannot engage in such an analysis until it first is determined that the sentence is grossly disproportionate to the gravity of the offense charged.

Applying the *Rummel* benchmark, the Court finds the length of Shoemate's sentence is much less severe than that in *Rummel*.  Although Rummel was parole eligible "in as little as 12 years . . . [the Court was] preclude[d] from treating his life sentence as if it were equivalent to a sentence of 12 years. . . .  If nothing else, the possibility of parole, however slim, serves to distinguish Rummel from a person sentenced . . . for . . . life without parole. . . ." *Rummel v. Estelle*, 445 U.S. 263, 280 (1980).  Therefore, Shoemate's sentence of eighteen years is compared to Rummel's life sentence, which is greater.  Shoemate makes no argument and alleges no facts to show that he is effectively sentenced to a life sentence.

As for the gravity of the offense, the Court is only told that it was a sale of cocaine.  The Court can only infer that it was less than two ounces, since Shoemate was not given a mandatory life

sentence.  No matter what amount of cocaine Shoemate sold, that is a more serious offense than Rummel's fraudulent use of a credit card for $80, forging a check for $28.36, and obtaining $120.75 by false pretenses  the first two of which were used to justify his habitual offender sentence.  *Id.* at 265-66.  The Court is unable to say that eighteen years without parole is grossly disproportionate to selling less than two ounces of cocaine.  *See*, *Hutto v. Davis*, 454 U.S. 370, 370-72, 376 (1982) (upholding 20 year sentence for selling three ounces of marijuana and consecutive 20 year sentence for possessing with intent less than six ounces of marijuana).

Because Shoemate fails to allege that his sentence is grossly disproportionate to his particular offense, he fails to state a claim under the Eighth Amendment.

HABEAS

Construing the Complaint liberally, it appears that Shoemate also seeks habeas relief, because as alternative relief, he requests to either be re-sentenced or pardoned.  Part of the basis for this request is an allegation of ineffective assistance of counsel and involuntariness of a guilty plea.  If a favorable ruling would "automatically entitle [the prisoner] to accelerated release," then the action is one for habeas corpus.  *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995).

Before Shoemate can pursue a habeas claim in this Court, he must exhaust his available state remedies.  28 U.S.C. § 2254(b)(1)(A).  This gives "the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  In order to exhaust his claims, he is required to seek relief from the highest court of the State.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 840 (1999).

Shoemate does not allege that he has exhausted his habeas claims, or that he has even brought them before a State court at any level.  Therefore, the Court declines to sever the habeas claims.

10

Instead, they are dismissed without prejudice.

**IT IS THEREFORE ORDERED AND ADJUDGED** that, for the reasons stated above, the 42 U.S.C. § 1983 claims are **DISMISSED**.  The due process, *ex post facto*, and double jeopardy claims are dismissed **WITH PREJUDICE** as frivolous.   The equal protection and Eighth Amendment claims are dismissed **WITHOUT PREJUDICE** for failure to state a claim upon which relief could be granted.  The dismissal of the § 1983 claims count as a strike pursuant to 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED AND ADJUDGED** that any remaining habeas claims are **DISMISSED WITHOUT PREJUDICE**.  A separate final judgment shall issue pursuant to Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 18th day of August, 2015.

s/Carlton W. Reeves
UNITED STATES DISTRICT JUDGE